## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL SHECHTMAN, | No. 4:23-CV-01156 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| U.S. XPRESS INC.,<br>U.S. XPRESS LEASING, and<br>QUAMI WALLEN, | |
| Defendants. | |

## MEMORANDUM OPINION

### JANUARY 22, 2026

## I.    BACKGROUND

Plaintiff Michael Shechtman ("Plaintiff") filed a four-count complaint against Defendants U.S. Xpress Inc. ("U.S. Xpress"), U.S. Xpress Leasing ("Xpress Leasing"), and Quami Wallen ("Wallen") (collectively, "Defendants").[1] Plaintiff brought a direct negligence claim against Wallen, both direct and vicarious liability negligence claims against U.S. Xpress, and a direct negligence claim against Xpress Leasing.[2] Parties proceeded to discovery and, after a slew of discovery disputes, completed discovery on July 25, 2025.[3]

---

[1]    Doc. 1 (Compl.).
[2]    Doc. 1 at 5, 7, 8, 11 (Counts I–IV).
[3]    Doc. 48 (Sch. Ord.).

Defendants then filed the instant motion for partial summary judgment, moving to dismiss the following: Plaintiff's punitive damages claims against Wallen and U.S. Xpress, Plaintiff's direct liability claim against U.S. Xpress, and all of Plaintiff's claims against Xpress Leasing.[4] The motion is now ripe for disposition. For the reasons stated below, it is granted.

## II.    DISCUSSION

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[6] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[7] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[8] "Further, in ruling on a summary judgment

---

[4]    Doc. 50 at 2-3.
[5]    FED. R. CIV. P. 56(a).
[6]    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[7]    *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).
[8]    *Id.*

motion a court may, in appropriate cases, render partial summary judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure."[9]

Party testimony is sufficient to raise a genuine dispute of material fact on an issue: "'a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment.'"[10] "This is true even where, as here, the information is self-serving."[11] However, courts are not required to credit conclusory testimony, that is, evidence failing to set forth specific factual assertions and instead regurgitating opinions and conclusions.[12] "[C]onclusory testimonial evidence cannot defeat summary judgment."[13]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[14] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[15] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule

---

9    *Kramer v. Newman*, 840 F. Supp. 325, 327 (E.D. Pa. 1993).

10   *Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018) (quoting *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314, 320 (3d Cir. 2014)).

11   *Id.*

12   *Daimler v. Moehle*, No. 23-2611, 2025 WL 1355138, at *5 (3d Cir. May 9, 2025).

13   *Id.*; *see also Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012).

14   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

15   *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

56(c)," the Court may "consider the fact undisputed for purposes of the motion."[16] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[17]

### B.    Undisputed Facts

With that standard outlining the framework for review, I now turn to the undisputed facts, resolving doubts in favor of the Plaintiff, the non-moving party.

The case arises from a low-speed motor vehicle collision between two tractor-trailers occurring on October 5, 2022.[18] The accident took place at a truck stop, with Defendant Wallen backing his tractor-trailer into the driver's side of the cab of Plaintiff Shechtman's tractor-trailer.[19] It was around 10:00 p.m. when the accident occurred, and the parking area was relatively poorly lit.[20] Plaintiff was sleeping in the bunk of his tractor at the time of the collision.[21]

After the accident, Defendant Wallen drove his truck away from Plaintiff's truck before circling around and asking Plaintiff and another witness to assist him with backing into the parking space adjacent to Plaintiff's tractor trailer.[22] Plaintiff

---

[16]   Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[17]   Fed. R. Civ. P. 56(c)(3).

[18]   Doc. 51 (Statement of Material Facts) ¶¶ 1, 7, 11, 12; Doc. 52 (Counterstatement of Material Facts) at 6-7.

[19]   Doc. 51 ¶¶ 7, 10; Doc. 52 ¶ 1.

[20]   Doc. 51 ¶ 8.

[21]   Doc. 51 ¶ 5; Doc. 52 ¶ 1.

[22]   Doc. 51-2 (Defendants' Exhibit B "DXB") at 37:19-25.

believed that, at first, it appeared that Defendant Wallen was "trying to leave" the scene.[23]

Pennsylvania State Police Trooper Brian Kitko ("Trooper Kitko") responded to the scene, interviewing both Plaintiff and Defendant Wallen.[24] The accident caused modest property damage to Plaintiff's tractor and trailer, and Plaintiff did not report any personal injuries at the scene.[25] This crash was deemed "preventable" by U.S. Xpress's internal monitoring system.[26]

At the time of the collision, Defendant Wallen was employed by U.S. Xpress with his truck provided to him by Xpress Leasing[27] and acting in the course of his employment.[28] U.S. Xpress hired Defendant Wallen two months prior, on August 9, 2022.[29] At the time of his hiring, Defendant Wallen had three to six months of truck driving experience and then underwent several days of training with U.S. Xpress.[30] During that training, Defendant Wallen passed his Enhanced Backing Test.[31]

On his employment application, Defendant reported a history of driving violations, including a reckless driving charge from August 2020[32] and three other

---

[23]  *Id.*
[24]  Doc. 51 ¶¶ 9-10;
[25]  *Id.* at ¶¶ 12-13.
[26]  Doc. 52-5 (Plaintiff's Exhibit D "PXD") at 82:16-24.
[27]  Doc. 52 ¶ 5; Doc. 51 ¶ 23.
[28]  Doc. 51 ¶ 14.
[29]  Doc. 51 ¶ 18; Doc. 52 ¶ 5.
[30]  Doc. 52 ¶ 6; Doc. 51 ¶ 19.
[31]  Doc. 51-9 (DXI); Doc. 51 ¶ 20.
[32]  Doc. 52 ¶ 8 (Defendant was going 89 miles per hour in a 55 mile per hour zone).

speeding violations in June, August, and December of 2020.[33] Defendant Wallen also failed to disclose to U.S. Xpress in his application that he had a previous DUI charge, resulting in license suspension.[34] The totality of Defendant Wallen's traffic record includes in excess of fifty traffic violations.[35]

In the hiring process, U.S. Xpress confirmed that Defendant Wallen had prior truck driving experience, confirmed his license and motor vehicle record, and confirmed his prior work experience through a combination of third-party vendor information as well as personally contacting prior employers.[36] It is unclear from the record whether U.S. Xpress had actual knowledge of Defendant Wallen's traffic history, as U.S. Xpress uses a "three to five year 'look-back' period" for prior traffic and criminal offenses.[37] For the purposes of this motion, the Court resolves this dispute by assuming that, with a driving record search, Defendant U.S. Xpress could have known of the totality of Defendant Wallen's driving history.

Curiously, during his time at U.S. Xpress, Defendant Wallen created three Tik Tok videos that show him recording himself while driving at high speeds on open

---

[33]  Doc. 52-6 (PXE) at 63-64.

[34]  Doc. 52 ¶ 7.

[35]  Doc. 52-10 (PXI).

[36]  Doc. 51 ¶ 16.

[37]  Doc. 52 ¶ 27. In his brief in opposition, Plaintiff switches between claiming that Defendant U.S. Xpress would have been aware of Defendant Wallen's record with "[a] simple investigation" Doc. 52 at 25, and claiming that Defendant U.S. Xpress did know of the driving record, Doc. 52 at 24. The exhibits Plaintiff cites for the proposition that Defendant U.S. Xpress knew of Defendant Wallen's seven-year suspension of his driver's license, Doc. 52 at 24 n.7, do not provide support for such a claim. Defendant U.S. Xpress has not advanced a position one way or the other.

stretches of highway.[38] These Tik Toks were public and used the hashtag #trucking.[39] Defendant U.S. Xpress did not monitor all social media accounts for noncompliance with company policy,[40] but prior to the instant crash had been in litigation with a different employee that involved improper cell phone use.[41] There was also minimal monitoring in place for cell phone usage by drivers.[42]

Within a month of his hiring, in September 2022, Defendant Wallen was involved in a different accident.[43] This accident was deemed "preventable," meaning the driver "was able to take reasonable action to avoid the accident without causing another accident."[44] After the September 2022 accident, Defendant U.S. Xpress had a telephone call with Defendant Wallen and placed him on "accident probation" until June 2023.[45] Following the instant accident in October 2022, Defendant Wallen was also involved in an accident in November 2022, deemed "non preventable."[46] Then, in December 2022, Defendant Wallen was involved in yet another "preventable" accident.[47] Defendant Wallen continued to drive for Defendant U.S. Xpress until

---

[38] Doc. 52-7 (PXF); Doc. 52-8 (PXG); Doc. 52-9 (PXH).
[39] Doc. 52 ¶ 11.
[40] Doc. 52-5 (PXD) at 95:25-96:3.
[41] Doc. 52-6 at 17-18.
[42] Doc. 52-5 at 95:1-96:11.
[43] *Id.* at 78:15-79-10.
[44] *Id.*
[45] *Id.* at 79:15-18, 81:11-23.
[46] *Id.* at 84:7-12.
[47] *Id.* at 85:3-10.

January 15, 2023, at which point he took voluntary leave and discontinued his employment.[48]

## C.    Analysis

As referenced above, Defendants move for partial summary judgment as to the following: Plaintiff's punitive damages claims against Wallen and U.S. Xpress, Plaintiff's direct liability claim against U.S. Xpress, and all of Plaintiff's claims against Xpress Leasing.[49]

Preliminarily, Plaintiff consents to dismissal of all claims against U.S. Xpress Leasing and the entry of summary judgment in its favor.[50] Accordingly, summary judgment is granted in favor of Xpress Leasing, and all claims against it are dismissed without prejudice.

### 1.    Punitive Damages

Defendants move for summary judgment on Plaintiff's punitive damages claims against Defendants Wallen and U.S. Xpress. Plaintiff's claims against Defendants, both direct and vicarious, sound in negligence under Pennsylvania law.[51] Federal courts sitting in diversity must apply state substantive law, including the standard for punitive damages.[52]

---

[48] *Id.* at 22:3-15.
[49] Doc. 50 at 2-3.
[50] Doc. 52 at 31.
[51] Doc. 1 at 5-9.
[52] *See Wilson v. TA Operating, LLC*, No. 4:14-CV-00771, 2017 WL 569195, at *3 (M.D. Pa. Feb. 13, 2017) (Brann, J.); *Jones v. Silver Creek Transport, LLC*, 701 F. Supp. 3d 284 (W.D. Pa. 2023).

The Pennsylvania Supreme Court in *Hutchinson v. Luddy* set forth the standard applied uniformly by courts in this district.[53] "The Pennsylvania Supreme Court has held that punitive damages may not be awarded for negligence or gross negligence. . . . [r]ather, such damages are only appropriate where the Defendant has acted with 'willful, wanton, or reckless conduct.'"[54] "'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'"[55] "[W]hen assessing the propriety of the imposition of punitive damages, '[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious.'"[56] In this context, a "reckless" mental state refers only to deliberate indifference or conscious disregard of facts that create a high degree of risk of physical harm to another.[57]

The Third Circuit has recognized that, on summary judgment, district courts may determine whether a plaintiff has met the standard for a punitive damage claim.[58]

---

[53]  *Hutchinson*, 582 Pa. 114, 121-22 (Pa. 2005); *Wilson*, 2017 WL 569195, at *3-4 (collecting cases).

[54]  *Manfred v. Nat'l R.R. Passenger Corp.*, 106 F. Supp. 3d 678, 689 (W.D. Pa. 2015) (citing *Hutchinson*, 582 Pa. at 121-22).

[55]  *Hutchinson*, 582 Pa. at 121 (quoting *Feld v. Merriam*, 506 Pa. 383 (1984).

[56]  *Id.* at 122.

[57]  *Id.* at 122-23.

[58]  *Vitalis v. Sun Constructors, Inc.*, 481 F. App'x 718, 729 (3d Cir. 2012) (citing *Pichler v. UNITE*, 542 F.3d 380, 387 (3d Cir. 2008) ("If, on remand, the District Court determines that summary judgment is appropriate as to plaintiffs' punitive damages claim, then a trial will be unnecessary")); *Cochetti v. Desmond*, 572 F.2d 102, 103 (3d Cir. 1978) ("[T]o the claim for punitive damages, we conclude that on the record before the district court summary judgment was proper.").

### a.    Defendant Wallen

First, Defendants move to dismiss Plaintiff's claim of punitive damages against Defendant Wallen. Plaintiff responds with two assertions that he claims justify a finding of punitive damages: first, that Defendant Wallen "attempted to flee the scene of the collision;" and second, that Defendant Wallen's Tik Tok videos show a propensity for reckless driving.[59] Neither is sufficient to survive Defendants' motion.

At the outset, Plaintiff's claims that Defendant attempted to flee the scene of the collision are unsupported. It is true that "flight from the scene of an automobile accident, without attempting to stop or render aid," can demonstrate a degree of reckless indifference justifying punitive damages.[60] However, the evidence provided here does not show what Plaintiff claims that it does; the only evidence of Defendant's "attempted flight" is Plaintiff's deposition testimony, where he stated that, after the crash, Defendant initially pulled his truck away from the accident before making a U-turn and coming back to park next to Plaintiff's truck.[61] Plaintiff characterizes this testimony as Defendant Wallen "attempt[ing] to leave the crash site before he was stopped by Plaintiff," but the deposition materials cited provide no such assertion that Plaintiff, or anyone, did anything to "stop" Defendant or to

---

[59]    Doc. 52 at 21-23.
[60]    *Guy v. Eliwa*, No. 4:23-CV-00412, 2023 WL 5916468, at *6 (M.D. Pa. Sept. 11, 2023) (Brann, J.).
[61]    Doc. 52-3 (PXD) at 37:12-38:8.

force him to U-turn.[62] On the contrary, Plaintiff's testimony only indicates that Defendant pulled his truck around and parked.[63] There is no other evidence to suggest that Defendant Wallen was "attempting to flee" the scene.[64] Without more, Defendant Wallen's act in pulling his truck around and parking does not show a mental state of culpability high enough to justify punitive damages.

Subsequently, Plaintiff rests on the Tik Tok videos to support Defendant Wallen's "habitual tendency to drive recklessly," which Plaintiff asserts demonstrates reckless indifference.[65] Plaintiff argues that these videos alone could lead a jury to conclude that Defendant Wallen was using his cell phone at the time of the crash, which Plaintiff avers would render punitive damages appropriate.[66] I do not agree. Aside from the propensity evidence, Plaintiff points to nothing in the record suggesting that Defendant was on his phone at the time of the crash.[67] Plaintiff

---

[62] Doc. 52 at 22; Doc. 52-3 at 37:12-38:8.

[63] Doc. 52-3 at 37:12-38:8.

[64] Nor is this situation comparable to *Guy v. Eliwa*, a case that Plaintiffs rely on, as *Guy* involved a high-speed collision where Defendant made no effort to stop or render aid and then fled the scene. 2023 WL 5916468 at *1. The facts in *Eliwa* show evidence of a culpable mental state rendering punitive damages appropriate, but those facts are clearly distinguishable from the facts in this case.

[65] Doc. 52 at 22.

[66] *Id.* at 22-24.

[67] The Court does not believe that the Tik Tok evidence would be admissible to show that Defendant was likely reckless or using his cell phone on the day in question, as it is classic, textbook propensity evidence barred by Federal Rule of Evidence 404. *See, e.g., Prescott v. R&L Transfer, Inc.*, 111 F. Supp. 3d 650, 662-63 (W.D. Pa. 2015) (where past incidents of poor driving were inadmissible to show the driver acted in conformity with his prior conduct, but would have been admissible against the employer to show negligent hiring had those claims not been dismissed); *Williams v. Boulevard Lines, Inc.*, No. 10 Civ. 2924, 2013 WL 5652589, at *9 (S.D.N.Y. Sept. 30, 2013) (finding prior driving violations inadmissible against the driver

has not presented, for instance, phone records showing that Defendant Wallen was using his cell phone at or around the incident.[68]

Moreover, from the propensity evidence alone, no reasonable jury could find that Defendant was likely on his cell phone at the time of the accident. All three Tik Toks were filmed while Defendant Wallen was on an open stretch of highway, with none filmed while backing up or actively maneuvering the truck.[69] The probative value of propensity evidence, if even considered by the Court, is "slight" at best.[70] And here, it is insufficient.

Finally, even if a rational jury could somehow conclude that Defendant was using his phone at the time of the crash, this is still insufficient to meet the punitive damages standard. "[C]ell phone usage while driving, without more, is typically insufficient to support a finding of recklessness," barring some "aggravating factors

---

to prove propensity or character for negligent driving, but admissible against the employer to prove negligent hiring and retention).

However, I am hesitant to completely bar consideration of the evidence based on an argument not raised by Defendants. Evidence need not be admissible in its current form to be considered at summary judgment. *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 239 (3d Cir. 2016). Neither party has addressed the issue, and perhaps parties are aware of some manner in which this evidence would be admissible currently unknown to the Court. Accordingly, I will consider the evidence for purposes of summary judgment, but note that the probative value of propensity evidence is "slight," if any. *Prescott*, 111 F. Supp. 3d at 662 (quoting the Advisory Committee's Note to Rule 404(a)).

[68] *Cf Brown v. White*, No. 21-1387, 2022 WL 1664343, at *3 (E.D. Pa May 25, 2022) (where the court held that a reasonable jury could conclude the driver was on his phone from cell phone records and the dashcam footage showing a possible cell phone light glowing).

[69] *See* Doc. 52-7; 52-8; 52-9 (PXF-H).

[70] *See, e.g., Carpenter v. Vaughn*, 888 F. Supp. 635, 650 (M.D. Pa. 1994).

[that] render the cell phone usage particularly egregious."[71] Given that there is no evidence Defendant Wallen was using his cell phone at the time of the accident at all, let alone using it in a way that would give rise to aggravating circumstances, Plaintiff has not made a showing that Defendant Wallen's conduct rises to conduct so outrageous, extreme, or intentional as to justify an award of punitive damages.

Accordingly, I find that punitive damages against Defendant Wallen would be inappropriate, given that Plaintiff has failed to present any genuine issue of fact tending to show "willful, wanton, or reckless conduct."[72] Accordingly, I will grant Defendants' motion for summary judgment as to Plaintiff's punitive damages claims against this Defendant.

### b.    Defendant U.S. Xpress

The Pennsylvania Supreme Court has clarified that negligent hiring may be the basis for a punitive damages claim if the same *Hutchinson* standard of outrageous conduct described above has been met.[73] Plaintiff must set forward sufficient evidence to demonstrate that 1) Defendant U.S. Xpress had a subjective appreciation of the risk of harm to which Plaintiff was exposed, and 2) that Defendant acted or failed to act in conscious disregard of that risk.[74] A growing trend of district courts

---

[71] *Brown v. White*, 2022 WL 1664343, at *3.
[72] *Hutchinson*, 582 Pa. at 121-22.
[73] *Hutchinson v. Luddy*, 582 Pa. 114, 126 (2005).
[74] *See, e.g., Felkner v. Werner Enters.*, No. 13-2189, 2014 WL 1013474, at *5 (E.D. Pa. Mar. 14, 2014) (citing to *Hutchinson*, 870 A.2d at 772).

in the Third Circuit demonstrates that an employee's prior "accidents or incidents cannot serve as a basis for punitive damages against an employer when there is no nexus between the driving violations and the conduct leading to the accident such that an employer would have a conscious appreciation of the risk."[75] "Therefore, in determining the sufficiency of evidence for punitive damages, 'there must be some nexus between [alleged] violations and the cause of the accident.'"[76]

In determining whether punitive damages are appropriate, courts look to Defendant's training of the driver with regard to the specific circumstances of the accident,[77] and the driver's driving record with a focus on similar previous accidents.[78] Some courts allow for punitive damages for employers who were on notice that their employee was violating the Federal Motor Carrier Safety

---

[75] *Felkner*, 2014 WL 1013474, at *6; *Achey v. Crete Carrier Corp.*, No. 07-CV-3592, 2009 WL 9083282, at *5 (E.D. Pa. Mar. 30, 2009); *Ditzler v. Wesolowski*, No. 05-325, 2007 WL 2253596, at *7 (M.D. Pa. Aug. 3, 2007); *Villagran v. Freightbull, Inc.*, 698 F. Supp. 3d 807, 810 (E.D. Pa. 2023).

[76] *Villagran*, 698 F. Supp. 3d at 810 (quoting *Achey*, 2009 9083283 at *7-8 and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which the liability was premised, may not serve as the basis for punitive damages.")).

[77] *Villagran*, 698 F. Supp. 3d at 811 ("Plaintiff draws no link between [Defendant's] supposed egregious conduct and its failure to train on this one subject."); *Felkner*, 2014 WL 1013474, at *6 ("[T]here is no evidence that Werner trained or encouraged their drivers to blow their air horns and drive through yellow lights in a situation where they did not think they could stop for a red light.").

[78] *Achey*, 2009 WL 9083282, at *5 (where a driver had a litany of prior accidents but none relating to his sleep apnea that caused the accident in question); *Felkner*, 2014 WL 1013474, at *6; *Villagran*, 698 F. Supp. 3d at 811-12 (noting Defendant's few prior infractions over a long history of commercial driving, and that none were for reckless driving nor involved a license suspension).

Regulations ("FMCSRs") when the same violation contributed to the accident.[79] It is unclear when the failure to check driving records of prospective employees alone may be sufficient to warrant punitive damages.[80]

Whether the facts present here would be sufficient for a finding of punitive damages is a difficult question. Plaintiff's main argument is that Defendant U.S. Xpress's hiring of Defendant Wallen with his questionable driving record is itself sufficient to be outrageous conduct.[81] Defendant responds by pointing out that, in hiring, Defendant U.S. Xpress "conducted a background check, confirmed that Defendant Wallen had a valid and current commercial driver's license, and gave him several days' worth of training."[82] In the Court's mind, Defendant has the better argument here; punitive damages are not appropriate given the facts of this case.

First, Defendant Wallen did not have a prior history of incidents like the one at issue, namely, accidents resulting from the improper maneuvering of vehicles.

---

[79]  *See Brown v. Brooks*, No. 23-2966, 2024 WL 4643528, at *2 (E.D. Pa. Oct. 31, 2024) (collecting cases).

[80]  *See, e.g., Brown*, 2024 WL 4642538, at *4 ("[B]y itself the failure to check driving records of prospective employees may be insufficient to establish 'a sufficiently high degree of risk of harm to others as to warrant punitive damages'") (quoting *Dillow v. Myers*, 78 Pa. D. & C. 4th 225, 239 (Pa. Commw. Ct. 2005)); *but see Ditzler v. Wesolowski*, No. 3:2005-325, 2007 WL 2253596, at *6 (W.D. Pa. Aug. 3, 2007); *cf Carson v. Tucker*, 5:20-CV-00399, 2020 WL 4015244, at *5-6 (E.D. Pa. July 16, 2020) ("The allegations also do not mention any previous incidents that may put [driver's] driving capabilities in question such as a known medical condition or previous accidents and safety violations with a nexus to the current incident."). The Court is unaware of, and Plaintiff has not provided, any cases holding that poor driving record alone is sufficient to allow punitive damages. *See Achey*, 2009 WL 9083282, at *5 (where hiring a driver with a far worse record of accidents than Plaintiff here was still insufficient to raise punitive damages).

[81]  Doc. 52 at 24-27.

[82]  Doc. 55 (Reply Br.) at 6.

Instead, Plaintiff points to his speeding violations, reckless driving violation, and DUI license suspension.[83] From the record, it appears that Defendant Wallen's driving history includes seatbelt violations; driving without insurance, license or registration violations; defective equipment violations; speeding violations; and several violations for which the Court simply cannot decipher the underlying rationale.[84] Defendant Wallen's license had also been suspended multiple times in the past, which he reported to Defendant U.S. Xpress on his application and listed the reason as unpaid parking tickets.[85]

The most similar violation to the one at hand would be any improper driving citations or accidents resulting from the poor maneuvering of vehicles. From the record provided by Plaintiff, Defendant Wallen has one "improper lane change" violation, but apparently no accidents before the one occurring in September 2022.[86] The circumstances of Defendant Wallen's DUI are unknown, and there is no evidence that the DUI led to any type of accident or property damage.[87] Accordingly, Defendant Wallen's admittedly poor driving record would not put Defendant U.S. Xpress on notice that he would be so likely to cause accidents or property damage as to raise a high degree of risk of physical harm to others.

---

[83]  Doc. 52 at 24-27.
[84]  Doc. 52-10 (PXI); Doc. 52-6 (PXE).
[85]  Doc. 52 at 25 (citing Doc. 52-6 (PXE) at 61).
[86]  Doc. 52-10 (PXI).
[87]  The only record evidence for Plaintiff's DUI is the excerpted driving record provided in the Stidham report. Doc. 52-6 (PXE) at 35.

Next, the instant accident, with minor property damage and apparently some injuries to Plaintiff's person, is not particularly serious, and it is the kind likely to result from a low-speed vehicular backing accident. Defendant U.S. Xpress presumably did not train Defendant Wallen to purposefully back into other trucks, nor did he previously demonstrate an inability to do so.[88] Indeed, Defendant U.S. Xpress trained Defendant Wallen on proper backing procedures and then administered a test, which he passed.[89] Therefore, there is no evidence that Defendant U.S. Xpress could subjectively appreciate a high risk of harm to Plaintiff, or others like him, from accidents such as this.

Plaintiff also takes issue with Defendant U.S. Xpress's monitoring, or lack thereof, of Defendant Wallen's cell phone usage.[90] This contention is unpersuasive for two reasons. First, as discussed above, there is no evidence that Defendant Wallen's cell phone usage, including his regrettable Tik Tok tendencies, contributed in any way to the accident here. Furthermore, while Defendant Wallen's Tik Toks were public, there is no reason to believe that Defendant U.S. Xpress was on notice of his improper videography while driving. Defendant Wallen's Tik Tok account did not even use his real name,[91] and there is no evidence that a search by Defendant Wallen's name would have found these videos. It is both impracticable and

---

[88] *See Felkner*, 2014 WL 1013474, at *6.
[89] Doc. 50-9 (DXI).
[90] Doc. 52 at 26.
[91] Doc. 52-8; Doc. 52-9; Doc. 52-10 (PXF-H).

inappropriate to impose punitive damages upon Defendant U.S. Xpress for failing to monitor every trucking related hashtag to see if any of the millions of daily posted videos were made by an employee.

Additionally, the expert report of Joey Stidham submitted by Plaintiff includes conclusions that Defendant U.S. Xpress showed a willful, reckless, and conscious disregard for the safety of other motorists when they allowed drivers "to utilize their cell phones and social media" while driving.[92] As noted above, there is no evidence that Defendant Wallen was utilizing his phone or social media at the time of this accident. Stidham's report also concludes that, because of Wallen's driving record, "U.S. Xpress should not have hired" him,[93] but the standard for punitive damages is much higher than whether Defendant U.S. Xpress should not have hired Defendant Wallen.

Plaintiff also references this Court's decision in *Guy v. Eliwa,* arguing that Defendant's failure to monitor or audit Wallen's driving record contributes to a finding of recklessness.[94] However, *Eliwa* involved a driver violating FMCSRs about hours, and the Defendant company knew or had reason to know he was violating policy.[95] Here, there is no evidence that Defendant's failure to monitor or audit Wallen's driver logs did anything to contribute to the accident. Plaintiff makes

---

[92] Doc. 52-6 (PXE) at 59;
[93] *Id.* at 64.
[94] Doc. 52 at 27; 2023 WL 5916468.
[95] *Eliwa*, 2023 WL 5916468, at *8.

no allegation that Wallen was, for instance, sleep deprived or that he was violating other applicable FMCSRs.[96] Accordingly, the Court sees Defendant U.S. Xpress's failure, if any, to monitor Defendant Wallen's driving logs as a non-issue for this motion, as Plaintiff has not shown a causal relation between the alleged failure to audit and the accident.

Plaintiff's argument essentially rests on Defendant's hiring of Defendant Wallen despite his poor driving record.[97] Surely some number of prior violations, or a prolific and serious history of accidents, could render a driver so "palpably inadequate" or "egregiously underqualified" as to support an award of punitive damages against the company that hired him.[98] But the facts of this case do not rise to that level. Defendant Wallen's driving history, while indeed problematic, is not so serious as to demonstrate that U.S. Xpress had deliberate indifference or conscious disregard of facts that create a high degree of risk of physical harm to another.[99] There is no "causal nexus" arising between his prior violations and the instant accident.

---

[96]   Doc. 52 at 24-27.

[97]   Plaintiff provides no cases that have found a lengthy record of driving violations alone sufficient to sustain an award of punitive damages. Doc. 52 at 24-27. Plaintiff provides as an exhibit the jury slip of what Plaintiff claims to be a similar case, where a jury apparently found punitive damages appropriate, Doc. 52 at 27, but does not provide the factual basis or a means to locate the factual basis. Despite efforts to locate the case and verify the factual basis, the Court has been unable to do so.

[98]   *See Villagran*, 698 F. Supp. 3d at 811 (using these terms to refer to the driver's trainers when considering a claim of punitive damages in a negligent hiring case).

[99]   *Hutchinson*, 582 Pa. at 121.

While Defendant Wallen should probably not again be permitted to drive commercially, especially after his multiple accidents at U.S. Xpress, Plaintiff has not presented evidence that would allow a reasonable jury to conclude that hiring him was "outrageous" such that U.S. Xpress had an "evil motive" or "reckless indifference to the rights of others."[100] Accordingly, Defendants' motion for summary judgment on Plaintiff's claim for punitive damages against Defendant U.S. Xpress is granted.

### b.    Direct Liability Against U.S. Xpress

"[F]ederal courts in Pennsylvania have found 'a plaintiff cannot pursue a claim against an employer for negligent entrustment, hiring, supervision, or training when the employer admits that its employee was acting within the scope of employment when the accident occurred.'"[101] An exception exists, though, when plaintiffs can sustain a punitive damages claim against the employer.[102]

The parties are in agreement about the state of the law on this issue, only disputing whether punitive damages are appropriate here or not.[103] For the reasons enumerated above, Plaintiff has not made out a viable punitive damages claim and,

---

[100] *Id.*

[101] *See, e.g., Tjokrowidjojo v. San Lucas*, No 20-6564, 2021 WL 1143379, at *2 (E.D. Pa. Mar. 25, 2021) (collecting cases).

[102] *Id.*

[103] Doc. 52 at 27-28, Doc. 50 at 10-11.

therefore, the exception does not apply here. Accordingly, Defendants' motion for summary judgment on Plaintiff's direct claims against U.S. Xpress is also granted.

## III.    CONCLUSION

Defendants' motion for partial summary judgment is granted for all claims related to U.S. Xpress Leasing, for punitive damages against Defendant Wallen, for punitive damages against U.S. Xpress, Inc., and for direct liability claims against U.S. Xpress, Inc. Plaintiff's claims against U.S. Xpress Leasing are dismissed without prejudice. Judgment is entered in favor of U.S. Xpress, Inc. for Plaintiff's direct liability claims.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge